UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| LAURIE MARTIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:17-CV-00072 JAR |
| ) | |
| NANCY A. BERRYHILL, ) | |
| ACTING COMMISSIONER OF SOCIAL ) | |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

Plaintiff Laurie Martin brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner's final decision, following continuing disability review, that she was no longer entitled to previously-granted disability benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434.

**I.  Background**

On August 19, 2010, the Social Security Administration (SSA) awarded Plaintiff benefits on her application for disability benefits, finding her disabled as of December 11, 2009 due to residual symptoms from a head injury, including migraine headaches, photophobia, and dizziness. (Tr. 96-98) On November 3, 2014, during periodic review for continued entitlement to benefits, the SSA determined that Plaintiff was no longer disabled as of November 1, 2014. (Tr. 100, 122-25) After her request for reconsideration was denied (Tr. 141-52), Plaintiff requested a hearing before an administrative law judge ("ALJ"). Following a hearing on November 10, 2015, the ALJ issued a written decision on February 10, 2016, affirming the cessation of disability benefits and finding that Plaintiff's disability had ended as of November 1, 2014. (Tr. 20-33) On

April 18, 2017, the Appeals Council denied Plaintiff's request for review. (Tr. 107, 1395-1486) Thus, the decision of the ALJ stands as the final decision of the Commissioner. See Sims v. Apfel, 530 U.S. 103, 107 (2000). Plaintiff filed this appeal on May 8, 2017. (Doc. No. 1) Plaintiff filed a Brief in Support of her Complaint on August 1, 2017. (Doc. No. 12) The Commissioner filed a Brief in Support of the Answer on September 29, 2017. (Doc. No. 15)

**II.     Facts**

The Court adopts Plaintiff's Statement of Facts (Doc. No. 12-1) to the extent they are admitted by the Commissioner (Doc. No. 15-1). The Court also adopts Defendant's Statement of Additional Material Facts (Doc. No. 15-2). Together, these statements provide a fair and accurate description of the relevant record before the Court. Additional specific facts will be discussed as needed to address the parties' arguments.

**III.    Standards**

Once an individual becomes entitled to disability benefits, her continued entitlement to benefits must be reviewed periodically. 20 C.F.R. § 404.1594(a). If there has been a medical improvement related to the claimant's ability to work, and the claimant is able to engage in substantial gainful activity, then a finding of not disabled will be appropriate. 20 C.F.R. § 404.1594(a), (b)(3); Nelson v. Sullivan, 946 F.2d 1314, 1315 (8th Cir. 1991). The claimant has a "continuing burden" to demonstrate that she is disabled, and no inference is to be drawn from the fact that she has previously been granted benefits. Id. If the Commissioner seeks to end disability benefits because of an improvement in the claimant's medical condition, the Commissioner must demonstrate that "the conditions which previously rendered the claimant disabled have ameliorated, and the improvement in the physical condition is related to claimant's ability to work." Id. (citing 20 C.F.R. 404.1594(b)(2)-(5)).

"Medical improvement" is any decrease in the medical severity of the claimant's impairments which were present at the time of the most recent favorable medical decision that the claimant was disabled. 20 C.F.R. §§ 404.1594(b)(1). The "medical improvement" standard requires the Commissioner to compare a claimant's current condition with the condition existing at the time the claimant was found disabled and awarded benefits. Delph v. Astrue, 538 F.3d 940, 945–46 (8th Cir. 2008). Once a medical improvement has been established, the Commissioner must determine the claimant's residual functional capacity ("RFC") and whether, with this RFC, she can perform her past work. 20 C.F.R. §§ 404.1594(f)(7). If she can, the Commissioner will find the claimant's disability to have ended. Id. If the claimant cannot engage in her past relevant work, the Commissioner must consider whether the claimant can perform other jobs with her current RFC. 20 C.F.R. §§ 404.1594(f)(8). If she cannot, the Commissioner will find claimant's disability to continue. Id.

The Court's review of a termination of disability benefits pursuant to the continuing disability review process is limited to determining whether substantial evidence on the record as a whole supports the ALJ's decision. Dixon v. Barnhart, 324 F.3d 997, 1000 (8th Cir. 2003). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find it sufficient to support the Commissioner's decision. Buckner v. Astrue, 646 F.3d 549, 556 (8th Cir. 2011). The Court does not re-weigh the evidence or review the record de novo. Robinson v. Sullivan, 956 F.2d 836, 838 (8th Cir. 1992). Instead, even if it is possible to draw two different conclusions from the evidence, the Court must affirm the Commissioner's decision if it is supported by substantial evidence. Andrews v. Colvin, 791 F.3d 923, 928 (8th Cir. 2015); Anderson v. Astrue, 696 F.3d 790, 793 (8th Cir. 2012).

## IV. Decision of the ALJ

The ALJ determined that at the time of the comparison point decision ("CPD") of August 19, 2010, Plaintiff had the medically determinable impairments of migraine headaches and post-concussion syndrome, which met listing 11.03 of 20 C.F.R. § 404.1520(d). The ALJ found that through November 1, 2014, the date Plaintiff's disability ended, she did not engage in substantial gainful activity. (Tr. 22) The ALJ also found that as of November 1, 2014, Plaintiff had the following medically determinable impairments: cervical degenerative disc disease, osteoarthritis, major depressive disorder, and anxiety. (Id.) The ALJ determined that Plaintiff did not have an impairment or combination of impairments which met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, and that medical improvement occurred as of November 1, 2014. (Tr. 22-24)

Next, the ALJ found that the medical improvement was related to the ability to work because, as of November 1, 2014, Plaintiff's CPD impairments no longer met or medically equaled the same listing that was met at the time of the CPD. (Tr. 24) The ALJ also found, however, that as of November 1, 2014, Plaintiff continued to have a severe impairment or combination of impairments. (Tr. 24-25) The ALJ determined, based on the impairments present as of November 1, 2014, that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b) "except for being limited to frequent balancing and stooping, occasional kneeling, crouching, crawling, and climbing stairs and ramps, and never climbing ladders, ropes, and scaffolds. [Plaintiff] is limited to only occasional overhead reaching, pushing, and pulling with the bilateral upper extremities. [Plaintiff] must avoid working around hazards such as unprotected heights or around moving mechanical parts. [Plaintiff] is limited to performing simple, routine, and repetitive tasks not at a fast pace such as assembly line work with only

4

occasional changes in the work setting and occasional interaction with the public." (Tr. 25-32) The ALJ also determined that Plaintiff was unable to perform any of her past relevant work, but that there were a significant number of jobs in the national economy that she could perform. (Tr. 32) Finally, the ALJ concluded that Plaintiff's disability ended as of November 1, 2014. (Tr. 33)

## V. Discussion

In her appeal of the Commissioner's decision, Plaintiff contends the ALJ's RFC assessment is not supported by substantial evidence on the record as a whole. Plaintiff specifically argues the ALJ erred by failing to properly evaluate the medical opinion evidence and the objective medical evidence of record. Plaintiff also takes issue with the ALJ's finding regarding her work record as it relates to her credibility.

A claimant's RFC is defined as the most an individual can do despite the combined effects of all of his or her credible limitations. Moore v. Astrue, 572 F.3d 520, 523 (8th Cir. 2009) (citing 20 C.F.R. § 404.1545(a)(1)). The ALJ must determine a claimant's RFC based on all relevant evidence, including medical records, observations of treating physicians, and the claimant's own descriptions of her limitations. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir. 2001). An RFC determination made by an ALJ will be upheld if it is supported by substantial evidence in the record. See Cox v. Barnhart, 471 F.3d 902, 907 (8th Cir. 2006). RFC is a medical question. Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). In making a disability determination, the ALJ shall "always consider the medical opinions in the case record together with the rest of the relevant evidence in the record." 20 C.F.R. § 404.1527(b); see also Heino v. Astrue, 578 F.3d 873, 879 (8th Cir. 2009). It is the claimant's burden, not the Commissioner's, to prove the claimant's RFC. See Harris v. Barnhart, 356 F.3d 926, 930 (8th Cir. 2004); McKinney v. Apfel, 228 F.3d 860, 863 (8th Cir. 2000).

### A. Medical opinion evidence

Plaintiff argues the ALJ should have afforded greater weight to the opinions of her family nurse practitioner (FNP) Kimberly Keser and her treating psychiatrist Linda Kohler, M.D., as well as to the opinion of the consultative examiner Matthew Karshner, M.D., regarding Plaintiff's ability to stand.

In determining whether the ALJ properly considered the medical opinion evidence, the Court's role is limited to reviewing whether substantial evidence supports this determination, and not deciding whether the evidence supports the claimant's view of the evidence. See Brown v. Astrue, 611 F.3d 941, 951 (8th Cir. 2010); Brown v. Colvin, No. 4:13CV01693 SPM, 2014 WL 2894937, at *5 (E.D. Mo. June 26, 2014). When evaluating the opinion of a non-examining or consultative source, the ALJ must evaluate the degree to which the opinion considers all of the pertinent evidence, including opinions of treating and other examining sources. Wildman v. Astrue, 596 F.3d 959, 967 (8th Cir. 2010); 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). The opinions of non-examining or consultative sources do not, by themselves, constitute substantial evidence on the record as a whole, Vossen v. Astrue, 612 F.3d 1011, 1016 (8th Cir. 2010), but may properly be considered along with the other evidence of record, see Casey v. Astrue, 503 F.3d 687, 694 (8th Cir. 2007) ("The ALJ did not err in considering the opinion of [the State agency medical consultant] along with the medical evidence as a whole."). Upon review of the record as a whole and the ALJ's reasoning, the Court finds the ALJ provided good reasons for the weight given to the opinions of FNP Keser and Drs. Kohler and Karshner.

**FNP Kimberly Keser**

On May 26, 2015, Keser reported that Plaintiff had numerous health conditions "that can be disabling," including neck pain, hip pain, low back pain, knee pain, headache, dizziness,

obesity, obstructive sleep apnea, thyroid cancer, ovarian cyst, hypertension, hyperlipidemia, gastroesophageal reflux disease, and anxiety. (Tr. 1251-52) Keser opined it would be "beneficial to [Plaintiff] if she was able to obtain disability." (Tr. 1252) Plaintiff also relied on a Physician's Statement for Disabled License Plates or Placards signed by Keser on September 10, 2015, which stated that Plaintiff "cannot ambulate or walk 50 feet without stopping to rest due to a severe and disabling arthritic, neurological, orthopedic condition, or other severe and disabling condition." (Tr. 1397)

In evaluating Keser's opinion, the ALJ considered that Keser was a nurse practitioner and therefore not an acceptable medical source. (Tr. 31) "[O]nly 'acceptable medical sources' can be considered treating sources, as defined in 20 C.F.R. §§ 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight." See 20 C.F.R. §§ 404.1513(a), 416.913(a) (excluding nurse practitioners from the list of acceptable medical sources). Although the ALJ is required to consider Keser's opinion, SSR 06-03p, 2006 WL 2329939, she gave it little weight because Keser did not specify how Plaintiff's medical conditions resulted in any specific work-related limitations and because her opinions were inconsistent with the objective medical evidence of record. (Tr. 31) The Court agrees, finding the ALJ adequately explained how the record did not support Keser's opinion with citations to the record. (Tr. 28-31)

The ALJ also discounted Keser's opinion to the extent she opined that Plaintiff is disabled or unable to work, since the ultimate issue of disability is reserved to the Commissioner. Brown, 611 F.3d at 952 (citing cases); 20 C.F.R. §§ 404.1527(d), 416.927(d) (an opinion on the ultimate issue of disability is not a medical opinion, and is not entitled to any "special significance").

As for the Physician's Statement for Disabled License Plates or Placards signed by Keser, it is well settled that a finding of disability by a state agency for purposes of issuing disabled license plates is not binding on the Commissioner. See Apel v. Colvin, No. 2:13CV84 JAR, 2015 WL 1456974, *6 (E.D. Mo. Mar. 30, 2015) (citing 20 C.F.R. § 416.904). In light of the record evidence in this case, the reasons articulated by the ALJ are valid reasons for discounting Keser's opinions.

**Linda Kohler, M.D.**

On October 1, 2015, Dr. Kohler reported that due to severe depression, Plaintiff was emotionally and physically exhausted, incapable of functioning, and required supervision due to constant suicidal thoughts. (Tr. 1311) Dr. Kohler opined that Plaintiff is "incapacitated and unable to work in any work setting" due to "memory and concentration problems; severe migraines; depressed and anxious mood; low energy; low motivation; frequent crying spells; sleep disturbances; and chronic pain." (Id.)

In discounting Dr. Kohler's opinions, the ALJ noted that Plaintiff's mental status has never deteriorated to such an extent that inpatient psychiatric hospitalization or emergency psychiatric treatment for suicidal ideation was required. (Tr. 31) Indeed, a review of the record indicates that Plaintiff routinely denied suicidal thoughts, and multiple mental status examinations were normal. (Tr. 955, 961, 1125, 1136, 1141, 1158, 1163, 1179, 1182, 1260, 1284, 1336, 1342, 1354) The ALJ further found Dr. Kohler's opinions were inconsistent with her own treatment records reflecting a global assessment of functioning (GAF) score of 55, which denotes moderate mental limitations. (Tr. 31, 1246) Lastly, the ALJ determined that to the extent Dr. Kohler opines Plaintiff is disabled, her opinion cannot be given any weight because the ultimate issue of disability is reserved to the Commissioner. Brown, 611 F.3d at 952.

Moreover, Dr. Kohler's opinions were inconsistent with the medical evidence as a whole. See 20 C.F.R. §§ 404.1527(c)(1)-(2), 416.927(c)(1)-(2); SSR 96–2p ("In appropriate circumstances, opinions from State agency medical and psychological consultants and other program physicians and psychologists may be entitled to greater weight than the opinions of treating or examining sources."); Shoemate v. Colvin, No. 2:14 CV 32 DDN, 2015 WL 417571, at *9 (E.D. Mo. Feb. 2, 2015). In his psychological evaluation report dated October 8, 2014, consultative medical examiner Paul Rexroat, Ph.D., found Plaintiff able to understand and remember simple instructions, and to sustain concentration and persistence with simple tasks. (Tr. 975-78) He found mild limitations in Plaintiff's ability to interact socially and moderate limitations in her ability to adapt to her environment. (Tr. 977) The ALJ found Dr. Rexroat's opinions consistent with the objective medical evidence that Plaintiff's symptoms of depression and anxiety were stable on prescribed psychotropic medications. (Tr. 30)

Likewise, non-examining State agency psychologists James Morgan, Ph.D., and Joan Singer, Ph.D., found Plaintiff able to understand and remember simple instructions and sustain concentration and pace, with mild limitations in her ability to interact socially, moderate limitations in her ability to adapt to her environment, and moderate limitations in daily living. (Tr. 997, 1225) Both found Plaintiff's alleged severity unsupported in light of objective findings which have consistently been normal, including mood, affect and memory, and opined that Plaintiff retains the ability to complete simple repetitive tasks on a sustained basis. (Id.) Dr. Singer specifically noted that despite Plaintiff's allegations of memory loss, she was able to complete her forms in great detail. (Tr. 1225) The ALJ gave the opinions of Drs. Morgan and Singer "considerable weight" because they are experts in the evaluation of the medical issues in disability claims under the Social Security Act and because their opinions were supported and

consistent with the objective medical evidence of record. (Tr. 31) See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i) (State agency medical consultants are highly qualified experts in Social Security disability evaluation; therefore, ALJs must consider their findings as opinion evidence); Kamann v. Colvin, 721 F3d 945, 951 (8th Cir. 2013) (State agency psychologist's opinion supported ALJ's finding that claimant could work despite his mental impairments); Casey, 503 F.3d at 694 (finding ALJ did not err in considering State agency psychologist's opinion along with the medical evidence as a whole).

Plaintiff suggests that additional treatment records from Dr. Kohler were not included in the record and that the ALJ erred by failing to supplement the record. It is well settled that an ALJ has a duty to develop the record, which may include requesting additional records if the medical evidence is insufficient. Snead v. Barnhart, 360 F.3d 834, 836–37 (8th Cir. 2004); 20 C.F.R. §§ 404.1520b, 416.920b (2012). Here, however, Plaintiff's mother, acting as her representative, assured the ALJ at the hearing that the record was complete and up-to-date, with the exception of some records from Advanced Pain Center which were later submitted. (Tr. 50-52) "[T]he ALJ is not required to function as the claimant's substitute counsel, but only to develop a reasonably complete record." Clark v. Shalala, 28 F.3d 828, 830–31 (8th Cir. 1994). The Court's review of the hearing transcript confirms the ALJ sufficiently developed the record.

**Matthew Karshner, M.D.**

Dr. Karshner evaluated Plaintiff on January 15, 2015 and opined, based on his observations, physical examination findings, and Plaintiff's statements and medical history, that Plaintiff appeared "able to perform and sustain work-related functions including sitting, standing, handling objects, hearing, and speaking without any significant deficits. Lifting and carrying

would be at light duty at this point, and standing for long periods of time is discouraged, allowing a 5- to 10-minute standing period as a limit." (Tr. 1203)

The ALJ gave significant weight to Dr. Karshner's opinions limiting Plaintiff to light exertional activity, but little weight to his standing restrictions of 10-15 minutes, because this limitation was not supported by the record or his clinical findings on exam. (Tr. 30-31) In particular, Plaintiff was able to walk without difficulty or abnormalities, walk on her heels and toes, tandem walk, hop, and squat. (Tr. 29, 1202) The ALJ found this consistent with evidence of record showing Plaintiff's gait was steady and her lower extremity strength and range of motion were intact. (Tr. 857, 958, 1125, 1134, 1182, 1259-60, 1284, 1403) Although Plaintiff complained of knee pain when hopping and squatting, there was a full range of motion of the left minimal patellar chondrosis present. (Tr. 1203) Dr. Karshner's examination of the spine was unremarkable except for limited range of motion of the lumbar spine and tenderness to the cervical spine. (Tr. 1203) Further, while Plaintiff claimed she needed a wheelchair due to dizziness, there were no findings of neurological deficits to explain the need for a wheelchair and she denied such symptoms on many occasions throughout the record. (Tr. 955, 961, 966, 1092, 1122, 1141, 1146, 1150, 1155, 1160, 1165, 1171, 1179, 1259) Dr. Karshner also reported that Plaintiff was able to walk without an assistive device and when doing so, appears to have normal balance. (Tr. 1203)

Plaintiff argues that in crediting only a portion of Dr. Karshner's opinion, the ALJ violated the "cardinal rule" that an ALJ may not pick and choose those portions of a medical report favorable to her position, while ignoring others, citing Switzer v. Heckler, 742 F.2d 382, 385-86 (8th Cir. 1984). An ALJ is not required to adopt all the limitations of any medical opinion. See Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011). However, where an ALJ

assigns significant weight to an opinion, he must give an explanation if he then disregards portions of the opinion in formulating the RFC. Gann v. Berryhill, 864 F.3d 947, 952-53 (8th Cir. 2017).

Here, the ALJ explained that Dr. Karshner's opinion as it related to Plaintiff's ability to stand was inconsistent with other evidence in the record (Tr. 29-31). The ALJ's determination to discount this unsupported and inconsistent opinion is supported by substantial evidence on the record as a whole, particularly since the record is clear that the ALJ seriously considered and adopted other supported portions of Dr. Karshner's medical opinion. See Perks v. Astrue, 687 F.3d 1086, 1092 (8th Cir. 2012) (internal quotation marks omitted) ("Physician opinions that are internally inconsistent are entitled to less deference than they would receive in the absence of inconsistencies.").

Further, the ALJ properly considered the opinions of non-examining State agency physicians Mel Moore, M.D., and John Jung, M.D., together with Dr. Karshner's report and the other medical evidence of record. See Casey, 503 F.3d at 694. Both Drs. Moore and Jung conducted physical RFC assessments of Plaintiff. (Tr. 981-86, 1208-14) Both found Plaintiff's reported functional limitations not fully supported by objective medical findings and opined that Plaintiff has the capacity to perform light work. (Tr. 983, 1210) The ALJ gave their opinions "considerable weight" because they are experts in the evaluation of medical issues in disability claims under the SSA and because their opinions are supported and consistent with the objective medical evidence of record. (Tr. 31) See 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i); Kamann, 721 F3d at 951.

Plaintiff argues the reports of Drs. Moore and Jung cannot be given great weight because neither physician reviewed Dr. Karshner's report; Dr. Moore's report predates Dr. Karshner's

report, and Dr. Jung's report does not reference it. Plaintiff does not provide, and the Court is not aware of, any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records. Barker v. Colvin, No. 14-0900-CV-W-ODS-SSA, 2015 WL 4928556, at *1 (W.D. Mo. Aug. 18, 2015).

### B. Objective medical evidence

Plaintiff claims the ALJ failed to properly consider records from Advanced Pain Clinic dated June 30, 2015 to October 16, 2015 showing significant treatment for headaches, cervical disc disease, and hip pain. (Tr. 1334-94) However, the ALJ specifically discussed these records in her decision, noting that rather than indicating disabling neck and hip pain, they reflected that Plaintiff's pain was controlled with medication. (Tr. 29) On June 30, 2015, Plaintiff began treatment for neck and hip pain (Tr. 1372). Examination of her cervical spine revealed normal range of motion, intact muscle strength, intact sensation, and normal reflexes (Tr. 1375). She reported moderate tenderness in the upper facet area (Tr. 1375). Examination of her hip showed normal range of motion with moderate tenderness in the trochanteric area (Tr. 1376). The following month her examination was unchanged and she began a series of epidural injections (Tr. 1350, 1361, 1365, 1369). In September 2015, she reported that injections had helped some (Tr. 1341). By October 2015, Plaintiff reported improvement in her pain with an increase in her medication dosage (Tr. 1335). On examination, she reported moderate tenderness over her cervical spine, but her strength and sensation were intact and her range of motion was within normal limits (Tr. 1337). There was no indication of further treatment. These records do not show that Plaintiff was disabled, but instead that her impairments responded to treatment over

the course of five months. See Wildman, 596 F.3d at 965 (an impairment controlled by treatment or medication cannot be considered disabling).

Plaintiff cites to other objective medical evidence of record to support the findings of FNP Keser and Drs. Kohler and Karshner. (Doc. No. 12 at 11-12) As the Commissioner correctly notes however, the ALJ did not find that Plaintiff was symptom-free. Rather, she determined that Plaintiff was only capable of performing a limited range of light exertional activity with limitations. These limitations account for Plaintiff's supported symptoms, including pain. (Tr. 25) It is not surprising that in an administrative record which exceeds 1,400 pages, Plaintiff can point to some evidence which detracts from the Commissioner's determination. Nevertheless, the Court may not reverse that decision simply because it would have reached a different conclusion than the Commissioner. See Igo v. Colvin, 839 F.3d 724, 731 (8th Cir. 2016). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the [Commissioner's] findings, the court must affirm the [Commissioner's] decision." Pearsall, 274 F.3d at 1217.

### C. Credibility

"The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." Holmstrom v. Massanari, 270 F.3d 715, 721 (8th Cir. 2001). In assessing a claimant's credibility, the ALJ must consider: (1) the claimant's daily activities; (2) the duration, intensity, and frequency of pain; (3) the precipitating and aggravating factors; (4) the dosage, effectiveness, and side effects of medication; (5) any functional restrictions; (6) the claimant's work history; and (7) the absence of objective medical evidence to support the claimant's complaints. Finch v. Astrue, 547 F.3d 933, 935 (8th Cir. 2008); Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984).

The ALJ found Plaintiff's medically determinable impairments could have reasonably been expected to produce her alleged symptoms; however, her statements concerning the intensity, persistence and limiting effects of those symptoms are not credible to the extent they are not supported or consistent with the evidence of record. (Tr. 27-28) In particular, the ALJ found that Plaintiff's poor work record – "even before allegedly disabling impairments were a factor"- tended to indicate she may have another reason for not working. (Tr. 27) The ALJ also noted Plaintiff's ability to work after disability was established as demonstrated by her earnings record. (Tr. 27, 239)[1]

Plaintiff argues the ALJ's credibility determination is not supported by the evidence and that she has shown a continuous past work record with no evidence of malingering. However, a review of the record indicates that in the fifteen years[2] prior to her award of disability benefits, Plaintiff had no reported earnings in six years, and yearly earnings below $5,000 in another two years. During this period of time, Plaintiff's annual earnings exceeded $20,000 in only three years. The ALJ properly considered Plaintiff's sporadic work history in discounting her credibility. Buckner v. Astrue, 646 F.3d 549, 558 (8th Cir. 2011).

In addition to her poor work record, the ALJ found that Plaintiff's activities of daily living did not support her allegations regarding functional limitations. No treating or examining physician placed any specific long-term limitations on Plaintiff's ability to stand, sit, walk, lift, carry, or do other basic exertional activities. There was also no evidence of nonexertional pain seriously interfering with or diminishing Plaintiff's ability to concentrate and focus on task. (Tr.

---

[1] Plaintiff earned $10,092.60 in 2004; $18,441.72 in 2005; $21,984.67 in 2006; $26,374.34 in 2007; $44,417.79 in 2008; $19,896.97 in 2009; and $5,549.26 in 2010. (Tr. 239)

[2] See 20 C.F.R. § 404.1565 ("We consider that your work experience applies when it was done within the last 15 years …").

27) There was also no evidence that Plaintiff's prescribed medications were not generally effective when taken as prescribed or that they imposed significant adverse side effects. (Id.) See Wildman, 596 F.3d at 965 (an impairment controlled by treatment or medication cannot be considered disabling); Goff v. Barnhart, 421 F.3d 785, 792 (8th Cir. 2005) (ALJ can disbelieve subjective complaints if there are inconsistencies in the evidence as a whole and lack of corroborating evidence is just one of the factors the ALJ considers).

## VI. Conclusion

For these reasons, the Court finds the ALJ's determination that Plaintiff is "no longer disabled" is supported by substantial evidence on the record as a whole. The Commissioner's final decision to discontinue benefits will be affirmed.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**, and Plaintiff's Complaint is **DISMISSED** with prejudice. A separate Judgment will accompany this Order.

Dated this 14th day of September, 2018.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**